IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| ESTHER MELENDEZ, § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | Civil Action No. 3:16-CV-0739-BK |
| § | |
| NANCY A. BERRYHILL, § | |
| Acting Commissioner of Social Security, § | |
| § | |
| Defendant. § | |

**MEMORANDUM OPINION**

Pursuant to the parties' consent to proceed before the undersigned, Doc. 15, this case has been reassigned to the Magistrate Judge. The Court now considers the parties' cross-motions for summary judgment. For the reasons that follow, Plaintiff's *Motion for Summary Judgment*, Doc. 22, is **DENIED**, Defendant's *Motion for Summary Judgment*, Doc. 23, is **GRANTED**, and the Commissioner's decision is **AFFIRMED**.

### I. BACKGROUND[1]

**A. Procedural History**

Plaintiff seeks judicial review of a final decision by the Commissioner denying her claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act ("the Act"). In August 2013, Plaintiff filed for DIB and SSI, claiming that she had become disabled at that time due to diabetes mellitus, high blood pressure, cholesterol, gallstones, heart problems, vision problems, sleep problems, headaches, fatigue, stiffness, chest

---

[1] The following background comes from the transcript of the administrative proceedings, which is contained in Docket Entry 14.

pains, and affective mood disorders. Doc. 14-1 at 29; Doc. 14-1 at 51-53; Doc. 14-2 at 56-59; Doc. 14-2 at 78. Her application was denied at all administrative levels, and she now appeals to this Court pursuant to 42 U.S.C. § 405(g). Doc. 14-1 at 25; Doc. 14-1 at 52; Doc. 14-1 at 79-81, 85, 90; Doc. 14-12 at 43.

**B.     Factual Background**

At the time of her alleged onset of disability, Plaintiff was 58 years old, had only attended school through the first grade, and was unable to read or write in either English or Spanish. Doc. 14-2 at 52, 56; Doc. 14-12 at 50. She had previous work experience as a cook. Doc. 14-1 at 38-39.

At medical visits during the relevant time frame, Plaintiff reported pain in her abdomen, wrists, hands, and knees, as well as neck and shoulder pain on the right side, and neuropathy in her fingers and toes. Doc. 14-4 at 85-86; Doc. 14-4 at 98; Doc. 14-7 at 27; Doc. 14-7 at 35; Doc. 14-7 at 48; Doc. 14-8 at 94; Doc. 14-9 at 76; Doc. 14-9 at 69; Doc. 14-10 at 3; Doc. 14-10 at 10; Doc. 14-12 at 37. Plaintiff had decreased dexterity in both hands (although her grip strength was normal) and she was diagnosed with cataracts. Doc. 14-5 at 1-2; Doc. 14-10 at 4. On multiple occasions, Plaintiff was diagnosed with diabetes, hypertension, and neuropathy, among other conditions. Doc. 14-9 at 74; Doc. 14-9 at 87; Doc. 14-9 at 95; Doc. 14-10 at 7; Doc. 14-12 at 4; Doc. 14-12 at 21; Doc. 14-12 at 29. After Plaintiff's diabetes remained uncontrolled on oral medication, she was started on insulin. Doc. 14-9 at 59-60, 62, 65.

Plaintiff was positive for blurred vision on a couple of occasions, at least one of which appears to have been the result of her losing her prescription eyeglasses. Doc. 14-12 at 36; Doc.

14-10 at 4. Generally, however, she did not complain of blurred vision or vision changes and had normal eye examinations. Doc. 14-9 at 81; Doc. 14-9 at 93-94; Doc. 14-9 at 97, 99; Doc. 14-10 at 1; Doc. 14-10 at 9; Doc. 14-12 at 26; Doc. 14-12 at 29-30.

## C. The ALJ's Findings

In May 2015, the ALJ determined that Plaintiff was not disabled within the meaning of the Act, first finding that Plaintiff's "severe impairments" were obesity and affective disorder/major depressive disorder. Doc. 14-1 at 21. The ALJ found that Plaintiff did not have an impairment or combination of impairments that met or equaled the criteria of any listed impairment. Doc. 14-1 at 2219-20. Next, the ALJ determined that Plaintiff had the residual functional capacity ("RFC") to perform medium work, in that she could lift and/or carry 50 pounds occasionally and 25 pounds frequently, stand/walk/sit for six hours in an eight-hour workday, and concentrate for extended periods of time, but only when performing simple one-to-two step tasks that are repetitive in nature. Doc. 14-1 at 23. Based on this RFC finding, the ALJ found that Plaintiff retained the ability to perform her past relevant work. Doc. 14-1 at 27. Accordingly, the ALJ found that Plaintiff was not disabled within the meaning of the Act. Doc. 14-1 at 28.

## II. APPLICABLE LAW

An individual is disabled under the Act if, *inter alia*, she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment" which has lasted or can be expected to last for at least 12 months. 42 U.S.C. § 423(d)(1)(A). The Commissioner uses the following sequential five-step inquiry to determine

whether a claimant is disabled: (1) an individual who is working and engaging in substantial gainful activity is not disabled; (2) an individual who does not have a "severe impairment" is not disabled; (3) an individual who "meets or equals a listed impairment in Appendix 1" of the regulations will be considered disabled without consideration of vocational factors; (4) if an individual is capable of performing her past work, a finding of "not disabled" must be made; (5) if an individual's impairment precludes her from performing her past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if any other work can be performed. *Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991) (per curiam) (summarizing 20 C.F.R. §§ 404.1520(b)-(f), 416.920 (b-(f)).

Under the first four steps of the analysis, the burden of proof lies with the claimant. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). The analysis terminates if the Commissioner determines at any point during the first four steps that the claimant is disabled or is not disabled. *Id.* If the claimant satisfies her burden under the first four steps, the burden shifts to the Commissioner at step five to show that there is other gainful employment available in the national economy that the claimant can perform. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994). This burden may be satisfied either by reference to the Medical-Vocational Guidelines of the regulations or by expert vocational testimony or other similar evidence. *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987).

Judicial review of the Commissioner's denial of benefits is limited to whether the Commissioner's position is supported by substantial evidence and whether the Commissioner applied proper legal standards in evaluating the evidence. *Greenspan*, 38 F.3d at 236; 42 U.S.C.

4

§§ 405(g), 1383(c)(3). Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant and sufficient evidence as a reasonable mind might accept as adequate to support a conclusion. *Leggett*, 67 F.3d at 564. Under this standard, the reviewing court does not reweigh the evidence, retry the issues, or substitute its own judgment, but rather, scrutinizes the record to determine whether substantial evidence is present. *Greenspan*, 38 F.3d at 236.

### III. ARGUMENT

Plaintiff argues that the ALJ committed legal error when he failed to consider in step two of the sequential analysis whether Plaintiff's diabetes, with complications including blurry vision, cataracts, and neuropathy, is a medically determinable impairment ("MDI"), and whether it is severe. Doc. 22-1 at 4 (citing Soc. Sec. R. 96-4p). Plaintiff notes that she testified at the administrative hearing that among many other impairments, she suffered from vision problems, diabetes, numbness in her hands, and an inability to stand for long periods of time, which interfered with her ability to work. Doc. 22-1 at 5. Plaintiff argues that she was prejudiced by the ALJ's failure to find that (1) her diabetes, with complications of blurry vision, cataracts and neuropathy, was an MDI; and (2) the MDI is severe. Doc. 22-1 at 5-6. As a result, Plaintiff asserts that she was further prejudiced by the ALJ's failure to incorporate the limitations from this MDI into Plaintiff's RFC assessment. Doc. 22-1 at 5-6.

Defendant responds that she does not possess the discretion to base a finding of disability solely on Plaintiff's diabetes with reported symptoms of blurry vision, cataracts, and neuropathy. Doc. 24 at 5. Further, Defendant argues that substantial evidence supports the ALJ's step two finding that Plaintiff's diabetes and associated symptoms did not constitute an MDI. Doc. 24 at

6. Additionally, because the ALJ progressed beyond step two and considered all limitations supported by the record in determining Plaintiff's RFC, Defendant contends that, even if there was error at step two, it was harmless. Doc. 24 at 6-7.

Furthermore, Defendant notes, the records in evidence indicate that Plaintiff generally reported being well and had good glucose levels and normal physical examinations. Doc. 24 at 7. Defendant argues that although Plaintiff has pointed to evidence that she suffers from diabetes and associated complications, she does not point to any evidence showing that she cannot work because of her alleged impairments or that they qualify as "severe" under the Act. Doc. 24 at 8-10.

## IV. ANALYSIS

At the second stage of the sequential analysis, the ALJ must decide whether an alleged impairment is an impairment at all within the specialized meaning of that term − if it is not, there is no error in failing thereafter to mention or analyze it further. *Domingue v. Barnhart*, 388 F.3d 462, 463 (5th Cir. 2004) (per curiam). An impairment is an MDI if there is objective medical evidence, such as medical signs and laboratory findings, demonstrating its existence. *See* 42 U.S.C.A. § 423(d)(3); Soc. Sec. R. 96-4p. A claimant's symptoms, such as pain and fatigue, will not be found to affect her ability to do basic work activities "unless medical signs or laboratory findings show that [an MDI] is present."[1] 20 C.F.R. §§ 404.1529(b), 416.929(b).

---

[1] The Fifth Circuit clarified in *Randall v. Astrue*, 570 F.3d 651, 657-59 (5th Cir. 2009), that the question of the existence of an MDI is distinct from, and logically antecedent to, the question of its severity. *See id.* at 657-58 (examining the Act and pertinent regulations and reasoning that both "make it plain that the two inquiries are distinct").

Only "acceptable medical sources," including physicians and psychologists, can opine as to the existence of an MDI. 20 C.F.R. §§ 404.1513(a)(1), 416.913(a)(1). The claimant's impairment must result from a physical or psychological abnormality which "can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. §§ 404.1521. Impairments must be established by "objective medical evidence from an acceptable medical source," not just by the claimant's statement of symptoms. *Id.* An MDI can be considered "not severe" only if it is a slight abnormality having such minimal effect on an individual that it would not be expected to interfere with the individual's ability to work, regardless of age, education or work experience. *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985).[2]

      If the ALJ proceeds past step two of the sequential evaluation process and includes a discussion of the MDI omitted at step two, it is presumed that the ALJ found that a severe impairment existed unless the ALJ states otherwise. In other words, the district court properly can draw this inference where the ALJ considers the impairments in question at later stages of the five-step sequential analysis because those stages are premised on a finding, at the second step of the analysis, that the impairments were severe. *See Reyes v. Sullivan*, 915 F.2d 151, 154 & n.1 (5th Cir. 1990) (per curiam).

---

[2] The ALJ in this case initially set forth an incorrect definition of "severity," noting that "[a]n impairment or combination of impairments is 'severe' . . . if it significantly limits an individual's ability to perform basic work activities. An impairment or combination of impairments is 'not severe' when medical and other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work." Doc. 14-1 at 20. However, in delivering his findings, the ALJ correctly stated the *Stone* standard. Doc. 14-1 at 21.

This is to be distinguished from the situation where the ALJ applies an incorrect severity standard at step two, explicitly rejects one or more of the claimant's impairments as non-severe based on that error, and proceeds to the later steps of the sequential analysis only with respect to other claimed impairments. *See Loza v. Apfel*, 219 F.3d 378, 393, 399 (5th Cir. 2000); *see also Reyes*, 915 F.2d at 154 & n.1 (court could infer that the ALJ found that the claimant's hypertension was a severe impairment because the ALJ found at step four that the hypertension did not prevent the claimant from performing his past relevant work); *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988) (per curiam) (holding that the ALJ did not err in not explicitly finding an impairment severe where the ALJ reached the fifth step of the sequential analysis in evaluating the claim and, as a result, implicitly found a severe impairment to exist); *Shipley v. Bowen*, 812 F.2d 934, 935 (5th Cir. 1987) (per curiam) (court could infer that the ALJ found that the claimant's back injury was a severe impairment because the ALJ found that the injury did not meet or equal a listed impairment and did not prevent the claimant from working as a security guard); *Moon v. Bowen*, 810 F.2d 472, 473 (5th Cir. 1987) (per curiam) (noting that the ALJ implicitly found that a severe impairment existed because he proceeded to step five taking the impairment into consideration).

In this case, that ALJ stated that "any other condition not mentioned in the above finding does not interfere with the claimant's ability to work and, therefore, is not 'severe' as defined by *Stone*." Doc. 14-1 at 22. Plaintiff, however, presented some evidence that could support a finding that her diabetes and associated symptoms constitute an MDI and are severe. First, there is objective medical evidence, including test findings and numerous doctors' opinions,

8

confirming Plaintiff's diabetes diagnosis. *See* 20 C.F.R. §§ 404.1513(a)(1), 416.913(a)(1) (providing that only "acceptable medical sources" can opine as to the existence of an MDI). Additionally, the medical records indicate that, at least occasionally, Plaintiff suffered from a loss of dexterity in her hands, neuropathy in her fingers and toes, blurry vision, and cataracts. Accordingly, Plaintiff's diabetes can be established as an MDI by the necessary medical evidence, not just by her statement of symptoms.

Nevertheless, an appeal of a procedural error from an administrative agency will not lead to a vacated judgment "unless the substantial rights of a party have been affected." *Anderson v. Sullivan,* 887 F.2d 630, 634 (5th Cir. 1989) (per curiam) (quoting *Mays*, 837 F.2d at 1364). In this case, the ALJ's error was harmless because he considered Plaintiff's diabetes and related symptoms including vision problems, neuropathy, and loss of dexterity in the hands, after step two of the sequential analysis, in assessing Plaintiff's RFC and ability to perform her past relevant work. Doc. 14-1 at 24-26.

In particular, in the course of supporting his RFC finding, the ALJ noted Plaintiff's (1) diabetes, observing that in May 2013 her "glucose was good and diabetes mellitus controlled" and that the consultative examiner had diagnosed her "as having diabetes mellitus," Doc. 14-1 at 25; (2) "visual impairment," stating that the consultative examiner found that Plaintiff's "[v]isual acuity without glasses was 20/70 in the right eye, 20/200 in the left eye, and 20/70 in both eyes," and citing to her allegations of vision-related problems during the administrative hearing, Doc. 14-1 at 24-25; (3) neuropathy, noting Plaintiff's complaints of pain in her wrist and hands, including cramps in her hands, and observing that Plaintiff had been diagnosed with "neuropathy

9

– most likely secondary to diabetes mellitus," Doc. 14-1 at 24-25; and (4) loss of dexterity in both hands, citing the consultative examiner's diagnosis of such, Doc. 14-1 at 25. The ALJ then went on to justify his RFC assessment after discussing and considering each of those diagnoses and related symptoms. Doc. 14-1 at 26. As such, reversal and remand is not warranted. *See Reyes*, 915 F.2d at 154 & n.1; *Mays*, 837 F.2d at 1364; *Shipley*, 812 F.2d at 935; *Moon*, 810 F.2d at 473.

## V. CONCLUSION

For the foregoing reasons, Plaintiff's *Motion for Summary Judgment*, Doc. 22, is **DENIED**, Defendant's *Motion for Summary Judgment*, Doc. 23, is **GRANTED**, and the Commissioner's decision is **AFFIRMED**.

**SO ORDERED**, June 2, 2017.

_____
RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE